IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

In re:

DONALD THOMAS GLENN,  CASE NO. 18-1555-JCO-13

    Debtor.

DONALD THOMAS GLENN,

    Plaintiff,
v.  ADV. PROC. NO. 18-66-JCO

ARMY & AIR FORCE EXCHANGE SERVICES,

    Defendant.

## MEMORANDUM OPINION AND ORDER

This matter came before the Court to adjudicate the limited issue of attorney's fees claimed by Plaintiff's counsel in this Adversary Proceeding filed by Donald Thomas Glenn ("Glenn") against Army & Air Force Exchange Services ("AAFES") alleging violation of the automatic stay imposed by §11 U.S.C. §362. The parties submitted a Statement of Stipulated Facts ("Stipulations") and oral arguments were presented by Attorney James Patterson as counsel for Glenn and Assistant United States Attorney Keith Jones as counsel for AAFES. Having considered the record, pleadings, briefs, Stipulations and arguments of the counsel, the Court finds that $1575.00 constitutes a reasonable attorney's fee award to Glenn's counsel for the following reasons:

## JURISDICTION

This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§1334 and 157, and the Order of Reference of the District Court dated August 25, 2015. The parties also consented to entry of a final order by this Court. (Doc. 18, ¶7).

## PROCEDURAL HISTORY AND FACTS

The parties submitted a Statement of Stipulated Facts ("Stipulation") which the Court adopts and summarizes in pertinent part herein. (Doc.37). On April 19, 2018, Donald Glenn ("Glenn") filed a chapter 13 bankruptcy petition, Case No. 18-1555, in the Southern District of Alabama (the "Bankruptcy") and listed the debt he owed to Army & Air Force Exchange Services ("AAFES"). (*Id.* at ¶1). Prior to the bankruptcy, AAFES had been offsetting Glenn's retirement benefits in amounts of approximately $648.44 per month ("Offsets") for payment on his outstanding indebtedness to AAFES. (*Id.* at ¶3). The Offsets ceased upon the filing of the Bankruptcy. (*Id.* at ¶4). AAFES filed a proof of claim (the "Claim") in the underlying bankruptcy case (ECF 6-1, Case No. 18-1555 Bankr. S.D. Ala.) on June 27, 2018, in the amount of $5,496.25. (*Id.* at ¶2). After ceasing Offsets for the months of May and June 2018, AAFES subsequently resumed offsetting Glenn's retirement benefits from July 2018 to January 2019. (*Id.* at ¶4).

Glenn, either personally or through his spouse, contacted or attempted to contact AAFES regarding the Offsets at the phone number listed on the credit card bill on November 2, 2018, November 5, 2018, November 16, 2018, December 18, 2018, and January 9, 2019. (*Id.* at ¶ 6).

Neither Glenn nor his spouse contacted or attempted to contact Bass & Associates, the entity which filed AAFES's Claim and is listed thereon for notice and payments. (*Id.* at ¶8). Glenn's counsel, Attorney Patterson, did not attempt to contact AAFES, Bass & Associates or the United States Attorney's Office regarding the post-petition Offsets prior to filing the adversary complaint. (*Id.* at ¶ 9).

Glenn filed the instant adversary proceeding on December 20, 2018. (*Id.* at ¶5). The certificate of service attached to the adversary complaint shows that a copy of the complaint was mailed to AAFES on December 20, 2018. (*Id.* at ¶10). Upon receiving the complaint, AAFES immediately addressed the stay violation by ceasing the Offsets. (*Id.* at ¶12). Notwithstanding the intervening Christmas and New Year's holidays, and despite the United States Government being temporarily shut down, AAFES issued a refund check on January 4, 2019, for every offset except the one processed January 4, 2019. (*Id.*)   On January 22, 2019, AAFES voided the January 4, 2019, check and reissued the refund check to Glenn through his attorney's office. (*Id.* at ¶13).

Initial service of the Adversary Complaint was not proper and Glenn's counsel subsequently obtained service upon the United States on March 5, 2019. (*Id*. at ¶ 20). On March 12, 2019, AAFES returned the final offset from January 2019 to Glenn. (*Id*. at ¶21). During the pendency of this matter, counsel for the parties engaged in discovery and exchanged communications regarding potential settlement wherein issues related to the attorney's fees claimed arose. (*Id.* at 22-25).   After several status settings, the Court determined that mediation would be appropriate and ordered the parties to participate in non-binding mediation. (Doc. 26).   Although mediation was initially unsuccessful, counsel for the parties subsequently

3

Case 18-00066    Doc 46    Filed 05/06/20    Entered 05/06/20 17:56:22    Desc Main
Document      Page 3 of 14

advised the Court that Glenn's claims were resolved excepting the issue of attorney's fees and costs sought by Debtor's counsel.

Glenn's attorney asserts he invested 28.6 hours in handling the adversary and initially requested a rate of $300.00 an hour totaling $8580.00 plus costs of $218.50. Thereafter, Glenn's Counsel acquiesced to an hourly rate of $225.00. (Doc. 43 at 4).  AAFES did not pose a significant argument against the $225.00 hourly rate sought.  Nonetheless, AAFES has continued to maintain that the total number of hours claimed are not compensable because they were unnecessarily incurred due to Glenn's Counsel's failure to exercise any efforts to contact AAFES and mitigate damages prior to instituting litigation. (Doc.10).  Due to the limited scope of the remaining issue, counsel for the parties consented to the Court taking this matter under submission based upon the record, pleadings, Stipulations, briefs and arguments of counsel.  No other pertinent facts are in dispute and this matter is ripe for adjudication by this Court.

## ISSUE

The issue presented is whether it is appropriate to reduce attorney's fees upon failure of Debtor's Counsel to attempt resolution of an automatic stay violation prior to filing an adversary proceeding.

## LEGAL ANALYSIS

The filing of a bankruptcy petition creates an estate comprised of all legal or equitable interests of the debtor in property as of the commencement of the case. 11 U.S.C.§541(a)(1); *See also*, *United States v. Whiting Pools Inc.*, 462 U.S. 198, 103 S.Ct 2309, 76 L.Ed 2d 515 (1983)(recognizing the broad scope of 11 U.S.C. §541).  Absent a statutory exception, Section 362(a) of the Bankruptcy Code operates a stay against the commencement or continuation of a

4

proceeding against a debtor or property of the estate that could have been commenced before the debtor filed bankruptcy including set off of amounts "owing the debtor . . . against any claim against the debtor." 11 U.S.C.§362(a)(7). The automatic stay is fundamental to the reorganization process. *In re Rush-Hampton Industries, Inc.,* 98 F. 3d 614 (11th Cir. 1996) (Citing H.R.Rep. No. 595, 95th Cong., 1st Sess. 340 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6296–97; *United States v. Norton,* 717 F.2d 767, 770–71 (3d Cir.1983)). Recognizing the importance of the automatic stay, Section 362(k)(1)[1] provides in part that an individual debtor injured by willful violation of the automatic stay is entitled to recover actual damages, including costs and attorney's fees. However, compensation awards must be necessary and reasonable and bankruptcy courts have broad discretion to determine the appropriateness of attorney's fees sought. *Collum v. East Alabama Medical Center et al.* (*In re Collum*), 604 B.R. 61 (Bankr. M.D. Ala. 2019); *Turner v. Fidelity Bank*, (*In re Turner*), 2019 WL 7667632 (Bankr. S.D. Ala. 2019).

*Applicability of §362(k)*

This Court previously noted that the remedies set forth in 11 U.S.C. §362(k) become applicable upon a willful stay violation causing injury to the Plaintiff. *Jackson v. Flagstar* (*In re Jackson)*, No. 14-3568, 2017 WL 1102849 (Bankr. S.D. Ala. March 23, 2017)(citing *Thomas v. Seterus et al.* (*In re Thomas)*, 554 B.R.512 (Bankr. M.D. Ala. 2016)). Violations of the automatic stay are "willful" if the violator (1) knew of the stay and (2) intentionally committed the act that lead to the violation of the stay, regardless of whether the violator specifically intended to violate the stay. *Jove Engineering, Inc. v. I.R.S.*, 92 F.3d 1539, 1555 (11th Cir. 1996). Any intentional

---

[1] Unless otherwise indicated, all references to "chapter" or "section" are to Title 11 of the United States Code which is generally referred to as the Bankruptcy Code.

act is willful if done with knowledge of the stay. *Fleet Mortgage Group, Inc. v. Kaneb,* 196 F.3d 265 (1st Cir.1999); *See also, In re GeneSys, Inc.*, (*In re Genesys, Inc.*), 273 B.R. 290, 294 (Bankr. D.D.C. 2001)(holding a creditor violates the automatic stay when it is aware of the debtor's bankruptcy case and nevertheless exercises its right of setoff); *Legrand v. Department of Housing and Urban Development, et al.* (*In re LeGrand*), No. ADV. 98-80166-W, 1999 WL 33486087 (Bankr. D.S.C. Mar. 8, 1999) (holding the government's setoff of the debtor's tax refund post-petition was a willful violation of the automatic stay).

It is undisputed that AAFES had knowledge of Glenn's bankruptcy filing prior to effectuating post-petition Offsets. Upon the filing of Glenn's bankruptcy in April of 2018, AAFES ceased the Offsets in May in June 2018 and filed its Claim on June 27, 2018. Although the record does not evidence any malice or overt intent on the part of anyone at AAFES to violate the stay, the post-petition Offsets caused injury to Plaintiff by depriving him of immediate use of his retirement funds. Notice of the Bankruptcy, coupled with intent to exercise the Offsets, necessitates a finding that the post-petition Offsets were willful violations of the stay. Thus, the injury sustained by Glenn as a result of the stay violation is compensable pursuant to 11 U.S.C. §362(k)(1).

*Attorney Fee Awards Under §362(k)(1): Not Carte Blanche*

As the automatic stay is a fundamental debtor protection, essential to the efficacy of the bankruptcy process, Section §362 of the Bankruptcy Code includes a statutory exception to the American Rule[2] by providing an individual injured by violation of the stay "shall" recover

---

[2] *See Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994)(stating it is the general rule in this country that unless Congress provides otherwise, parties are to bear their own attorney's fees (citing *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247–262, 95 S.Ct. 1612, 1616–1623, 44 L.Ed.2d 141 (1975) (tracing the origins and development of the American Rule)).

actual damages, including costs and attorney's fees. 11 U.S.C. §362(k)(1). In accordance with the statutory language, fee awards are mandatory upon a willful violation of the stay. However, since 362(k)(1) does not specify a mechanism for calculating attorney's fees, courts must look to other provisions of the Bankruptcy Code as well as pertinent case law and employ their discretion to evaluate the propriety of such requests.

*Reasonable and Necessary Standard*

Courts determining appropriate attorney fee awards under §362(k)(1) have applied the standards prescribed in 11 U.S.C.§330(a)(1)(A) allowing only, "reasonable compensation for actual, necessary services . . ." *Grant v. George Schumann Tire & Battery Co.,* 908 F.2d 874, 879 (11th Cir. 1990); *Lopez v. Consejo de Titulares del Condominio Carolina Court Apts. (In re Lopez),* 405 B.R. 24, 30–33 (1st Cir. BAP 2009); *Eskanos & Adler, P.C. v. Roman (In re Roman),* 283 B.R. 1, 11 (9th Cir. BAP 2002); *Sucre v. MIC Leasing Corp.,* (*In re Sucre*)226 B.R. 340, 351 (Bankr.S.D.N.Y.1998). To calculate reasonable attorney's fees, Courts routinely multiply the number of hours required to handle the matter by an applicable hourly rate (commonly referred to as the "Lodestar Method") and then make adjustments thereto based upon the specific facts of the case. *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct 1933, 76 L.Ed 2d 40 (1983); *Dillard v. City of Greensboro,* 213 F.3d 1347, 1353 (11th Cir.2000). When determining the number of hours reasonably expended, the Court must exclude hours that are excessive, redundant or otherwise unnecessary. *In re Sucre,* 226 B.R. 340, 351 (Bankr.S.D.N.Y.1998).

Once deduced, the Lodestar Method calculation is then adjusted up or down upon consideration of additional factors espoused in *Johnson v. Georgia Highway Express, Inc., 488*

7

F.2d 714 (5th Cir. 1974 ). Such factors include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesireability" of the case; (11) the nature and length of the professional relationship with the client and (12) awards in similar cases. *See also*, *Lopez v. Consejo de Titulares del Condominio Carolina Court Apts. (In re Lopez),* 405 B.R. 24 (1st Cir. BAP 2009)(recognizing the Lodestar Method is ordinarily used in determining the reasonableness of fees); *Deresinski v Deresinski*, (*In re Deresinski*) 250 B.R. 764 (Bankr. M.D. Fla. 2000)(explaining Lodestar Method calculation remains the starting point and once determined, court may adjust for other considerations including the 12 *Johnson* factors.)

Application of the reasonable and necessary standard of Section 330 to the facts of this case warrants a downward adjustment to counsel's attorney's fee request. The record supports a finding that the expenditure of 28.6 hours was simply not "necessary" to remedy the stay violation by AAFES. It is undisputed that AAFES initially ceased the Offsets upon notice of the filing of the bankruptcy, took swift action to immediately remedy the violation and expedited return of the Offsets despite national holidays and a government shutdown. In fact, the majority of the Offset funds were returned to the Debtor even before effectual service of the Adversary Complaint and the remainder within a week thereof. These are not the actions of a Creditor seeking to blatantly violate the stay or sit idly by with knowledge of the offense.

8

Case 18-00066   Doc 46   Filed 05/06/20   Entered 05/06/20 17:56:22   Desc Main
Document      Page 8 of 14

Additionally, the *Johnson* factors weigh in favor of a downward adjustment to the Lodestar Method calculation. This is not an unusual or egregious fact scenario with novel or difficult questions of law requiring any heightened skills beyond that of the average bankruptcy practitioner. There is no evidence before the Court that representation of the Debtor in this matter precluded other employment, imposed any onerous limitations or was undesirable for any reason. Additionally, since counsel also served as Glenn's general bankruptcy attorney, his pre-existing representation, for which he is separately compensated, afforded him the benefit of advance knowledge of Glenn's creditors and financial circumstances as well as AAFES'S previously compliant conduct. The Offsets, approximating $650.00 a month for 7 months were exacerbated by the lack of appropriate, timely communication with AAFES. There is no dispute that AAFES promptly ceased the Offsets and expedited return of the funds upon receipt of effective notice of the situation. In sum, the prior actions of AAFES to comply with the automatic stay and quickly remediate the violation demonstrate to the satisfaction of this Court that if counsel had expended a modicum of effort to communicate with the appropriate AAFES contact upon the first post-petition Offset, the violation would have promptly ceased, benefitting the Debtor and substantially reducing the time expended by counsel.

The Court surmises from its experience handling numerous stay violation matters in private practice and routinely presiding over fee requests since taking the bench, that a reasonable amount of time necessary to resolve the stay violation would not have exceeded seven hours for communications with the Debtor and the AAFES contact listed on the proof of claim. As Glenn's counsel previously acknowledged that a reduction of his initially requested hourly rate of $300.00 to $225.00 was warranted pursuant to §106(a)(3) and AAFES did not present a

9

significant argument to the contrary, this Court finds $225.00 is an appropriate hourly rate in light of the circumstances of this case and the experience of Glenn's counsel.

*Lack of Mitigation Efforts Supports Reduction of Fees*

Courts in this jurisdiction have limited attorney's fees when the debtor's attorney fails to make any effort to resolve automatic stay violations before instituting litigation. *Turner v. Fidelity Bank* (*In re Turner*), 2019 WL 7667632, (Bank. S.D. Ala. September 17, 2019); *In re Collum*, 604 B.R. 61; *In re Briskey,* 258 B.R. 473 (Bankr.M.D.Ala.2001). Although the language of §362(k)(1) does not require debtor's counsel to attempt resolution prior to instituting litigation, a myriad of decisions support the conclusion that lack of some effort to mitigate damages is inherently unreasonable justifying a reduced fee award by the amount that could have been avoided. *McGregor v McGregor (In re McGregor*), 606 B.R. 460, 465 (M.D. Fla 2019)(explaining if debtor had attempted to mitigate, she would have avoided 90% of her damages and upholding corresponding reduction of award); *Fravala v. E Holdings, Ltd. (In re Fravala)*, 2017 WL 3447936, at 4 (Bankr. M.D. Fla. Aug. 10, 2017) (explaining that a debtor claiming an injury under §362(k) has a duty to mitigate damages that may occur as a result of a stay violation); *Clayton v. King (In re Clayton),* 235 B.R. 801 (Bankr.M.D.N.C.1998) (finding that although the Bankruptcy Code does not require a debtor to warn his creditors of existing violations prior to moving for sanctions, the debtor is under a duty to exercise due diligence in protecting and pursuing his rights and in mitigating his damages with regard to such violations); S*ee also*, *In re GeneSys, Inc.,* 273 B.R. 290 (Bankr.D.C.2001); *In re Esposito,* 154 B.R. 1011

(Bankr.N.D.Ga.1993); *In re Yantis*, 553 B.R. 351 (Bankr. N.D. Ind. 2016); *In re Rosa*, 313 B.R. 1 (Bankr. D. Mass. 2004).

This Court concurs with the well-reasoned decisions holding that actions of debtor's counsel in hastily instituting litigation without first attempting resolution of the stay violation justifies a reduction of attorney's fees. Absent any pre-suit attempt by Debtor's Counsel to contact AAFES, it has not been established that filing of this proceeding was necessary to remedy the stay violation. Under the facts of this case, the post-petition Offsets commenced in July 2018 and the Adversary Complaint was not filed until December, yet in the interim not one communication was made by Debtor's Counsel to Creditor. Although the parties stipulated that "the debtor or his spouse made or attempted to make contact" with AAFES at a phone number on a credit card bill, there is no dispute that such efforts were contrary to the designated contact information prescribed on the AAFES Claim. Further, there is insufficient evidence that any such communications effectively conveyed the necessary information to an appropriate representative of AAFES. Notwithstanding the degree and efficacy of Debtor's efforts, the applicable case law clearly dictates that Debtor's counsel has an obligation to attempt resolution. This Court finds such reasoning sound as counsel possesses the requisite skill and expertise to ascertain the appropriate contacts and effectively convey pertinent information to seek prompt redress. It is unfortunate that no phone call, letter or other contact was made on behalf of the Debtor to the appropriate AAFES contact which was easily ascertainable from the AAFES' claim. The complete absence of any communication to AAFES by Debtor's counsel prior to the filing of this adversary is in the view of this Court sufficiently unreasonable to warrant limiting attorney's fees.

11

*Public Policy Disfavors Rewarding Unnecessary Litigation*

While the protections afforded by the automatic stay are fundamental and essential to the functioning of the bankruptcy system, it is imperative not to lose sight of both the purpose of the law and the equally important need to encourage efficiency in the bankruptcy system. *In re Collum* at 71. Courts have recognized the importance of striking a balance between the protection of debtors and effective use of the bankruptcy court's time and resources. *Id.* (*citing In re Briskey, 258 B.R. 473, 480 (Bankr.M.D.Ala.2001)*). In doing so, Courts have opined that parties should take necessary action toward resolution before seeking the intervention of the bankruptcy court. *In re Briskey* at 477-488.

This Court agrees that notions of good faith, sound judgment and professionalism should prevail favoring resolution when possible and litigation only when actually necessary to remedy a stay violation. A practice of allowing damages to fester and thereafter instigating litigation complaining thereof without any effort of counsel to attempt efficient resolution without Court involvement cannot be condoned. Such is especially true in a situation such as this wherein AAFES had been previously compliant, there was an apparent error and the Creditor's contact information was easily ascertainable. As a matter of public policy, it is not appropriate or equitable to reward needless escalation of matters. Further, it is foreseeable that awarding attorney's fees based upon the multiplication of easily avoidable damages could serve as an impetus to the proliferation of duplicitous actions interposed for the improper purpose of generating fees. In sum, this Court agrees with decisions explaining that Section 362(k)(1) is intended as a shield, not a sword and finds that when Debtor's Counsel files precipitous litigation without even attempting resolution beforehand, it is consistent with principles of equity and

12

sound public policy to limit attorney's fees to those that would have been required if mitigation efforts had been exercised.

## CONCLUSION

It is appropriate to limit Plaintiff's counsel's fees under §362(k)(1) to the amount of time reasonably required to remedy the stay violation. Upon application of Section 330 of the Bankruptcy Code, the Lodestar Method and the *Johnson* Factors, the facts of this case do not justify the full fee award sought by counsel. Additionally, lack of any effort whatsoever by Debtor's counsel to communicate with AAFES prior to filing this adversary unnecessarily exacerbated the attorney's fees claim. Further, in this instance wherein damages were allowed to mount for over six months without any contact with AAFES via proper channels, this Court does not find it equitable or prudent as a matter of public policy to award fees beyond those which would have been incurred had appropriate mitigation efforts been employed.

Accordingly, this Court finds that compensation of Glenn's counsel should be commensurate with the time and effort *reasonably* required to rectify the stay violation. Under the facts of this case, this Court finds that even under the most generous analysis, this matter should not have taken more than seven hours of time to resolve if minimal efforts to mitigate had been employed by counsel. Therefore, as counsel for the parties previously conceded that $225.00 is an appropriate hourly rate, it is hereby ORDERED, ADJUDGED and DECREED that

13

Plaintiff's counsel, James Patterson, Esq. is awarded attorney's fees of $1575.00 against Defendant, Army & Air Force Exchange Services in this matter.

Dated:　　May 6, 2020

                                              JERRY C. OLDSHUE, JR.
                                              U.S. BANKRUPTCY JUDGE

14

Case 18-00066　　Doc 46　　Filed 05/06/20　　Entered 05/06/20 17:56:22　　Desc Main
Document　　Page 14 of 14